IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CATHERINE THOMAS, et al., | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. GLR-20-3729 |
| ETHICON, INC., et al., | * | |
| Defendants. | * | |

\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Ethicon, Inc. and Johnson & Johnson's (collectively, "Defendants" or "Ethicon") Motion for Partial Dismissal of Plaintiffs' First Amended Complaint (ECF No. 11) and Motion to Sever Plaintiffs' Claims (ECF No. 3). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2021). For the reasons outlined below, the Court will grant in part and deny in part Ethicon's Motion for Partial Dismissal and will deny the Motion to Sever.[1]

## I.   BACKGROUND[2]

### A.   Ms. Thomas and Ms. Shiflett's Treatment and Injuries

Plaintiffs Catherine Thomas ("Ms. Thomas") and Patricia Shiflett ("Ms. Shiflett") (collectively, "Injured Plaintiffs") suffered from stress urinary incontinence and sought

---

[1] The Court notes that Defendants filed a Motion to Dismiss the original Complaint before Plaintiffs filed their First Amended Complaint (ECF No. 4). The Court will deny that motion as moot.

[2] Unless otherwise noted, the Court takes the following facts from the First Amended Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

surgical intervention to help treat it in the 2000s. They each received mesh implants that were developed and manufactured by Ethicon and designed to assist them with their conditions. (First Am. Compl. ¶¶ 2, 6, 10–11, 17). Over time, however, the materials used in the implants reacted negatively with their bodies, causing them to endure painful complications that eventually required them to undergo "revision procedures." (Id. ¶ 99, 102).

The specific allegations regarding Injured Plaintiffs' treatment and injuries in the First Amended Complaint are scant. On April 21, 2003, Dr. George Mamo surgically implanted Ms. Shiflett with an Ethicon Gynecare TVT product ("TVT") in Baltimore, Maryland. (Id. ¶ 6). The implant caused her to suffer from "pelvic pain, chronic inflammation, urgency, frequency, nocturia, dysuria, dyspareunia, difficulty and incomplete voiding, urinary tract infections, and worsening incontinence." (Id. ¶¶ 6–7). A few years later, on January 12, 2007, Dr. Parvez Shah implanted Ms. Thomas with an Ethicon TVT-Secur pelvic mesh product ("TVT-S") in Laurel, Maryland. (Id. ¶ 2). Ms. Thomas later suffered from complications causing "erosion, mixed incontinence, nocturia, difficulty and incomplete voiding, dyspareunia, and pelvic pain." (Id. ¶ 3).

Ms. Thomas and Ms. Shiflett allege that they each had to undergo unspecified "revision procedures" because of defects in Defendants' TVT and TVT-S products. (Id. ¶ 102). They do not state what the procedures were or when they were performed. Injured Plaintiffs allege that they suffered from injuries and related damages.

**B.**     **Surgical Mesh Generally**

Injured Plaintiffs provide far more detail about the use of surgical mesh generally than their own experiences with it. Surgical mesh products have been used to repair abdominal hernias since the 1950s. (Id. ¶ 26). In the 1970s, gynecologists began using mesh products designed for treating hernias to repair prolapsed organs. (Id.). By the 1990s, doctors used surgical mesh in the treatment of pelvic organ prolapse and stress urinary incontinence. (Id.).

Defendants' surgical mesh products, the TVT and TVT-S specifically, have been used to treat stress urinary incontinence. (Id. ¶ 27). The products are designed to repair weakened or damaged tissue. (Id. ¶ 28). During the surgical treatment for stress urinary incontinence, TVT or TVT-S mesh is permanently implanted in the patient to help support the weakened vaginal wall. (Id.). Most TVT or TVT-S products are made of "non-absorbable, synthetic, monofilament polypropylene mesh and/or collagen." (Id.).

Plaintiffs allege that "the scientific evidence shows that this TVT-S and TVT mesh material is biologically incompatible with human tissue." (Id. ¶ 30). The TVT-S and TVT mesh produces an immune response in "a large subset of the population" treated with the products. (Id.). This immune response, described as a "host defense response," can be severe and causes the polypropylene mesh, as well as some pelvic tissue, to degrade. (Id. ¶¶ 30–31). This degradation, in turn, "can contribute to the formation of severe adverse reactions." (Id.). The mesh can also cause "chronic inflammation of the pelvic tissue, shrinkage or contraction of the mesh leading to nerve entrapment, further inflammation, chronic infectious response and chronic pain." (Id. ¶ 31). As a result of the body's response

to the mesh products, women can experience "new-onset" symptoms, including pain during sex, urinary dysfunction, vaginal shortening and deformation, and other "adverse reactions." (Id.). Injured Plaintiffs allege that Ethicon was "aware or had actual knowledge" of these risks and misrepresented or failed to inform them about the risks. (Id.).

The collagen contained in TVT and TVT-S products is also dangerous. (Id. ¶ 32). Collagen can cause "hyper-inflammatory responses," which in turn can create problems with chronic pain and fibrotic reaction. (Id. ¶¶ 32, 84). When the products "disintegrate" while in the pelvis, the collagen can cause "adverse tissue reactions" which are "causally related to infection." (Id. ¶ 32). The collagen causes the body's tissues to "harden" in harmful ways. (Id.).

On October 20, 2008, the Food and Drug Administration ("FDA") issued a Public Health Notification outlining over 1,000 complaints it had received over a three-year period regarding the TVT and TVT-S products. (Id. ¶ 41). Injured Plaintiffs assert that the FDA's Manufacturer and User Facility Device Experience ("MAUDE") database indicates that Ethicon's pelvic mesh products were the subject of the 2008 notification. (Id. ¶ 42).

On July 13, 2011, the FDA issued a warning about complications associated with the TVT and TVT-S products, including those manufactured, marketed, and distributed by Ethicon. (Id. ¶ 43). The warning stated that "serious complications" related to the use of surgical mesh for treatment of pelvic organ prolapse, a distinct condition from stress urinary incontinence, "are not rare." (Id.). Around that time, the FDA received "increased reports of complications" associated with pelvic mesh products used to treat stress urinary incontinence, including TVT and TVT-S products. (Id.). The FDA explained: "Mesh

4

contraction (shrinkage) is a previously unidentified risk of transvaginal [pelvic organ prolapse] repair with mesh that has been reported in the published scientific literature and in adverse event reports to the FDA . . . . Reports in the literature associate mesh contraction with vaginal shortening, vaginal tightening and vaginal pain." (Id. ¶ 44). Plaintiffs allege that the mesh used in the TVT and TVT-S products is similar to the mesh used for pelvic organ prolapse repair described by the FDA as subject to mesh contraction, or shrinkage. (Id.).[3]

The FDA published a paper called "Urogynecologic Surgical Mesh: Update on the Safety and Effectiveness of Transvaginal Placement for Pelvic Organ Prolapse" around the same time as its safety notification described above. (Id. ¶ 46). The paper cited peer-reviewed literature indicating that mesh used in pelvic organ prolapse repair procedures could lead to complications "not experienced by patients who undergo traditional surgery without mesh." (Id.). The FDA indicated that there were "serious safety and effectiveness concerns" regarding the surgical mesh used in pelvic organ prolapse procedures. (Id. ¶ 48). Plaintiffs assert that the mesh used in Defendants' products "is the same mesh" used in pelvic organ prolapse treatment and cautioned by the FDA. (Id.).

---

[3] Plaintiffs appear to attribute the FDA's comments on pelvic organ prolapse mesh to the TVT and TVT-S products produced by Defendants. Plaintiffs' First Amended Complaint is not always clear about whether the FDA's comments were intended to address Ethicon's products or surgical mesh generally. (See First Am. Compl. ¶¶ 39–75). The discussion also vacillates between detailing allegations regarding mesh used in the treatment of pelvic organ prolapse and mesh used for stress urinary incontinence without explaining the differences in the products, the treatment for each condition, or the relative risks in using mesh to treat one condition versus the other. (See id.).

Other groups have argued that the risks presented by surgical mesh are unreasonable. On August 25, 2011, Public Citizen, a consumer advocacy group, submitted a petition to the FDA requesting a ban on the use of TVT-S and TVT products in pelvic repair procedures. (Id. ¶ 49). The group argued that the products should be recalled because they present serious risks to patients. (Id.). Additionally, in December 2011, the American College of Obstetricians and Gynecologists and the American Urogynecologic Society raised concerns about the use of pelvic mesh:

> There are increasing reports of vaginal pain associated with changes that can occur with mesh (contraction, retraction, or shrinkage) that result in taut sections of mesh . . . . Some of these women will require surgical intervention to correct the condition, and some of the pain appears to be intractable.

(Id. ¶ 50). The groups recommended that pelvic mesh only be used "for high-risk individuals in whom the benefit of mesh placement may justify the risk." (Id. ¶ 51). Again, Plaintiffs assert that the mesh used in pelvic organ prolapse repair and complained about by these organizations is the same mesh used in Defendants' TVT and TVT-S products. (Id.). Injured Plaintiffs contend that Defendants knew that the pelvic mesh products they produced and marketed for stress urinary incontinence carried the same risks as the pelvic mesh used to treat pelvic organ prolapse. (Id. ¶ 52).

On April 16, 2019, the FDA ordered all transvaginal pelvic organ prolapse device manufacturers, including Defendants, to stop selling pelvic organ prolapse products. (Id. ¶ 55). Because Plaintiffs contend that the mesh used to treat stress urinary incontinence is the same as the mesh used for pelvic organ prolapse, they assert that Defendants "knew or

should have known" about the risk that the TVT and TVT-S products created for patients. (Id. ¶ 56).

## C.   **Procedural History**

On December 23, 2020, Ms. Thomas and Ms. Shiflett, along with their respective husbands, Richard Thomas and Ray Shiflett, filed suit against Ethicon. (ECF No. 1). On March 12, 2021, Ethicon filed a Motion to Sever Plaintiffs' Claims (ECF No. 3) and a Motion to Dismiss the Complaint (ECF No. 4). On March 17, 2021, Plaintiffs filed their First Amended Complaint, mooting Defendants' Motion to Dismiss. (ECF No. 7). The First Amended Complaint alleges claims against both Defendants for: negligence (Count I); strict liability – design defect (Count II); gross negligence (Count III); strict liability – failure to warn (Count IV); breach of express warranty (Count V); breach of implied warranty (Count VI); fraudulent concealment (Count VII); constructive fraud (Count VIII); common law fraud (Count IX); negligent misrepresentation (Count X); unjust enrichment (Count XI); loss of consortium (Count XII); and punitive damages (Count XIII). (Id. ¶¶ 81– 244). Injured Plaintiffs' husbands joined the loss of consortium count only. (Id. ¶¶ 4, 8). Plaintiffs seek compensatory damages, economic damages, medical monitoring damages, punitive damages, restitution and disgorgement of profits, and attorneys' fees and costs. (Id. at 64–65).

On March 22, 2021, Plaintiffs filed their Opposition to Ethicon's Motion to Sever. (ECF No. 9). On April 7, 2021, Defendants filed a Reply (ECF No. 10) and a Motion for Partial Dismissal of Plaintiffs' First Amended Complaint, arguing that the Court should

dismiss Counts I, II, III, V, VI, VII, VIII, IX, X, and XI[4] (ECF No. 11). On April 15, 2021,

Plaintiffs filed their Opposition to the Motion for Partial Dismissal. (ECF No. 12). Ethicon

filed a Reply on April 29, 2021. (ECF No. 13).

## II.   DISCUSSION

**A.   <u>Standard of Review</u>**

### 1.   Motion to Dismiss

The purpose of a Rule 12(b)(6) motion is to "test[] the sufficiency of a complaint,"

not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of

defenses." <u>King v. Rubenstein</u>, 825 F.3d 206, 214 (4th Cir. 2016) (quoting <u>Edwards v.

City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if

it does not contain "a short and plain statement of the claim showing that the pleader is

entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible

on its face," <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp.

v. Twombly</u>, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). Though the plaintiff is

---

[4] Although Ethicon states in its Motion that it is contesting all claims except failure to warn (Count IV), it do not address Plaintiffs' claims for loss of consortium (Count XII) or punitive damages (Count XIII). (Defs.' Mem. Supp. Defs.' Mot. Partial Dismissal Pls.' First Am. Compl. ["Defs.' Mot. Dismiss"] at 2, ECF No. 11-1). Accordingly, the Court will not review those counts for dismissal.

not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs, 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, Iqbal, 556 U.S. at 678.

### 2.    Motion to Sever

"A district court has broad discretion in deciding whether to grant severance." Hudock v. Kent Cnty. Bd. of Educ., No. CCB-14-2258, 2015 WL 1198712, at *18 (D.Md. Mar. 16, 2015) (quoting Equal Rights Ctr. v. Equity Residential, 483 F.Supp.2d 482, 489 (D.Md. 2007)). There is "a presumption in favor of the nonmoving party that all claims in a case will be resolved in a single trial and not be severed, placing the burden on the party moving for severance to show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so distinct and separable from the others that a trial of that issue alone may proceed without injustice." Id. (quoting Equal Rights Ctr., 483 F.Supp.2d at 489) (internal quotation marks omitted).

**B.** <u>Analysis</u>

    **1.**    **Motion to Dismiss**

        **a.**    **Design Defect**

Ms. Thomas and Ms. Shiflett assert claims premised in whole or in part on an alleged design defect. Specifically, the allegation that Defendants' products suffered from a design defect forms part of Injured Plaintiffs' negligence claims (Counts I & III) and all of their strict liability – design defect claim (Count II). At bottom, although Injured Plaintiffs allege a defect, they fail to allege causation. Thus, the Court will dismiss all of Count II and Counts I and III to the extent they allege that Injured Plaintiffs suffered harm arising from a design defect.

In Maryland, negligent design defect and strict liability design defect are substantively similar claims for purposes of 12(b)(6). "A products liability design defect claim 'focuses upon the specifications for the construction of the product and the risks and benefits associated with that design.'" <u>Morris v. Biomet, Inc.</u>, 491 F.Supp.3d 87, 103 (D.Md. 2020) (quoting <u>Shreve v. Sears, Roebuck & Co.</u>, 166 F.Supp.2d 378, 411 (D.Md. 2001)). The negligence theory, on the other hand, "focuses on the conduct of the defendant." <u>Id.</u> (quoting <u>Parker v. Allentown, Inc.</u>, 891 F.Supp.2d 773, 780 (D.Md. 2012)). Both theories, however, require a showing of the same three elements, "defect, attribution of defect to the seller, and a causal relationship between the defect and the injury." <u>Id.</u> Accordingly, "the elements of proof are the same whether the claim [is] characterized as one for strict liability or negligence." <u>McCoy v. Biomet Orthopedics, Inc.</u>, No. ELH-12-1436, 2021 WL 252556, at *22 (D.Md. Jan. 25, 2021) (quoting <u>Heckman v. Ryder Truck</u>

Rental, Inc., 962 F.Supp.2d 792, 802 (D.Md. 2013)). As the claims either rise or fall together, the Court will address them simultaneously.

Ethicon raises two primary arguments regarding Injured Plaintiffs' design defect claim. First, Ethicon contends that Plaintiffs fail to "plead[] sufficient facts from which it could plausibly be shown that there was a design defect with [Ethicon's] medical devices." (Mem. Supp. Defs.' Mot. Partial Dismissal Pls.' First Am. Compl. ["Defs.' Mot. Dismiss"] at 3, ECF No. 11-1). Second, Ethicon argues that even if Plaintiffs allege a defect, they fail to allege that their injuries were caused by said defect. (Id. at 4). Plaintiffs respond that they allege a number of potential defects in their First Amended Complaint. (Pls.' Resp. Opp'n Defs.' Mot. Partial Dismissal Pls.' First Am. Compl. ["Pls.' Opp'n Mot. Dismiss"] at 5, ECF No. 12). Further, they contend that they adequately allege causation under the relaxed requirements of notice pleading. (Id.).

Here, Ms. Thomas and Ms. Shiflett allege sufficient details regarding the potential defects with the TVT and TVT-S products. Plaintiffs offer the following defects, which the Court has pared down to account for redundancy:

- The use of polypropylene material and collagen material caused immune responses that lead to injury;

- The propensity for the products "to contract or shrink inside the body," causing inflammation to the surrounding tissue;

- The use of "arms or anchors" in the design that are "likely to pass through contaminated spaces and injure major nerve routes in the pelvic region";

- The propensity for the products to become deformed;

- The "inelasticity" of the products causing them to become "mated" to areas in the pelvis, causing pain; and

- The propensity of the products to degrade and cause chronic inflammatory reactions.

(First Am. Compl. ¶ 99). Ethicon's argument that Plaintiffs fail to identify a defect is unfounded—indeed, the First Amended Complaint lists fifteen potential problems with the products' design. (Id.). Further, Ethicon appears to concede this point in its Reply by shifting the entire focus of its argument to causation. (Reply Supp. Defs.' Mot. Partial Dismissal Pls.' First Am. Compl. ["Ethicon Rep. Mot. Dismiss"] at 1, ECF No. 13). Accordingly, Injured Plaintiffs adequately allege a defect.

Injured Plaintiffs' design defect claims fail, however, because they do not allege adequately that the defects were the proximate cause of their injuries. The First Amended Complaint offers general language regarding causation:

> 102. The above-referenced defective propensities of the TVT-S and TVT are specifically linked to Plaintiffs' above-referenced injuries, such that they underwent reasonable and necessary revision procedures. If the TVT-S and TVT that were implanted in Plaintiffs did not exhibit the above-referenced defective propensities, there would have been no need to undergo revision procedures. The above-referenced defective propensities of the TVT-S and TVT continue to cause Plaintiffs injuries to this day.

> 103. Defendants' TVT-S and TVT products that were implanted in Plaintiffs exhibited some or all of the aforementioned defects as described herein. The specific defects of the TVT-S and TVT devices that Plaintiffs were implanted with are the direct and proximate causes of their injuries herein.

12

> 104. As a direct and proximate result of the TVT-S and TVT's aforementioned defects as described herein, the Plaintiffs have experienced significant mental and physical pain and suffering, have sustained permanent injury, have undergone medical treatment and will likely undergo future medical treatment and procedures, have suffered financial or economic loss, including, but not limited to, obligations for medical services and expenses, lost income, and other damages. As long as Defendants' TVT-S and TVT pelvic mesh products remain implanted in Plaintiffs or Plaintiffs experienced permanent injuries caused by Defendants' devices before removal, Plaintiffs will continue to suffer the above-referenced and new injuries until death.

(First Am. Compl. ¶¶ 102–04). Ms. Thomas and Ms. Shiflett do not provide any details, however, about the "necessary revision procedures" to connect them to any of the alleged defects in the TVT and TVT-S products' design. "[I]t is impossible . . . to determine whether or not Plaintiff[s] state[] a plausible claim for negligent design without some disclosure in the pleading of the alleged defect or deficiency in the design of the product, and how such defect was the proximate cause of Plaintiff[s'] alleged injuries." Dodson v. C.R. Bard, Inc., Civ. No. 3:20cv596 (DJN), 2020 WL 7647631, at *6 (E.D.Va. 2020) (emphasis added). Although Ms. Thomas and Ms. Shiflett identify alleged defects in the design of the products, they fail to set forth any facts to support their allegation that those defects were the cause of their injuries. Indeed, the sparse allegations in the First Amended Complaint regarding causation are largely conclusory statements devoid of factual enhancement. See Iqbal, 556 U.S. at 678 (stating that "naked assertions devoid of further factual enhancement" are insufficient to state a claim). As such, Ms. Thomas and Ms. Shiflett have failed to allege a necessary element of both strict liability and negligent design defect and the counts will be dismissed.

The Court recognizes that facts may become available during discovery that might support a claim for design defect. To the extent that Ms. Thomas and Ms. Shiflett discover facts establishing a causal connection between their injuries and the alleged design defects in the TVT and TVT-S products, they may seek leave to amend under Federal Rule of Civil Procedure 15(a)(2).

For the above reasons, Ms. Thomas and Ms. Shiflett's claims for negligent design defect (Count I – in part & Count III – in part) and strict liability design defect (Count II) will be dismissed without prejudice.

### b.    Negligent Manufacturing Defect

Injured Plaintiffs' negligence claims (Counts I & III) also appear to include claims for manufacturing defect.[5] (See, e.g., First Am. Compl. ¶¶ 83, 108). Ethicon argues these claims are deficient because the First Amended Complaint does not allege a specific defect in the manufacturing process. At bottom, the Court agrees and will dismiss Injured Plaintiffs' negligence claims to the extent they are premised on manufacturing defect.

To state a claim for manufacturing defect under Maryland law, a plaintiff must allege facts establishing that the product at issue either was not manufactured in accordance with the product's design specifications or that some other error occurred during the manufacturing process. Shreve, 166 F.Supp.2d at 411; see also Phipps v. Gen. Motors Corp., 363 A.2d 955, 959 (Md. 1976) (concluding that a manufacturing defect results when

---

[5] Although the First Amended Complaint is at times unclear, Ms. Thomas and Ms. Shiflett confirm in their Opposition that they do not allege strict liability manufacturing defect. (Pls.' Opp'n Mot. Dismiss at 8).

"the defect is a result of an error in the manufacturing process, that is where the product is in a condition not intended by the seller"). Because a manufacturing defect claim focuses on the conduct or procedures involved in the manufacturing process, it is insufficient to simply allege "that the product [was] defective at the time it left the manufacturer's control." Shreve, 166 F.Supp.2d at 411.

In Count I of the First Amended Complaint, Injured Plaintiffs allege that Ethicon "negligently manufactured" the TVT and TVT-S products. (First Am. Compl. ¶ 83). Plaintiffs allege broadly that the products "are defective because they did not conform, when leaving [Ethicon's] control," to a number of "express representations," including that "the manufacture of the TVT-S and TVT products" would "avoid an unreasonable risk of harm to women in whom the products were implanted." (Id. ¶ 86). Injured Plaintiffs do not, however, identify a specific defect in the manufacturing process of the TVT and TVT-S products that proximately caused their injuries. Further, they do not allege how the TVT and TVT-S products implanted in them departed from Ethicon's intended design specifications. By failing to allege these facts, Injured Plaintiffs have failed to state a claim for manufacturing defect. See Wohlberg v. Ethicon, Inc., No. GLR-20-2093, 2021 WL 1530088, at *2 (D.Md. April 19, 2021) (finding that plaintiff failed to state a claim for manufacturing defect where she failed to "identify any specific defect in the manufacturing process of her Gynecare implant" or "allege how the Gynecare implant departed from Ethicon's intended design specifications for the device"); Figeroa v. Ethicon, Inc., No. 2:19-CV-01188 KWR/KRS, 2020 WL 1434249, at *3 (D.N.M. Mar. 24, 2020) (dismissing manufacturing defect claims due to plaintiff's "fail[ure] to allege that the mesh deviated

from Defendants' design specifications"); <u>Kuchenbecker v. Johnson & Johnson</u>, No. 19-61712-CIV, 2019 WL 4416079, at *2 (S.D.Fla. Sept. 16, 2019) ("[T]he Complaint fails to specify how the device implanted in the Plaintiff deviated from manufacturing specifications. Without more, the Court simply cannot draw the reasonable inference that Defendants defectively manufactured the [device] that was implanted in the Plaintiff."). Accordingly, Injured Plaintiffs' manufacturing defect claim (Count I – in part & Count III – in part) will be dismissed.

### c.    Breach of Express and Implied Warranty

Injured Plaintiffs also raise claims of breach of express warranty (Count V) and breach of implied warranty (Count VI). At bottom, the claims are barred by the statute of limitations.

Maryland requires that "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Md. Code Ann., Com. Law ("CL") § 2-725. The cause of action "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." <u>Id.</u> § 2-725(2). "A breach of warranty occurs when tender of delivery is made." <u>Id.</u> The parties may not agree to extend the statute of limitations. <u>Id.</u> § 2-725(1).

Here, it is undisputed that tender of Injured Plaintiffs' implants occurred on the dates of their respective surgeries: January 12, 2007 for Ms. Thomas and April 23, 2003 for Ms. Shiflett. (First Am. Compl. ¶¶ 2, 6). Injured Plaintiffs' lawsuit was filed on December 23, 2020, well beyond four years of tender. Injured Plaintiffs argue, however, that the statute of limitations was tolled because Ethicon fraudulently concealed the cause of action from

16

the Plaintiffs. (Pls.' Opp'n Mot. Dismiss at 9); see Bacon v. Arey, 40 A.3d 435, 463 (Md.Ct.Spec.App. 2012) ("One general exception to the accrual of the statute of limitations occurs in situations in which a defendant fraudulently conceals the cause of action from the plaintiff 'so as to prevent its discovery by the exercise of due diligence.'" (quoting Atwell v. Retail Credit Co., 431 F.2d 1008, 1010 (4th Cir. 1970))).

In Maryland, the statute of limitations regarding warranty claims is tolled if "a cause of action is kept from a party by the fraud of an adverse party." Md. Code Ann., Cts. & Jud. Proc. § 5-203. The elements of fraudulent concealment are:

> (1) the defendant owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose that fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.

Doll v. Ford Motor Co., 814 F.Supp.2d 526, 537 (D.Md. 2011). Under Rule 9(b) of the Federal Rules of Civil Procedure, "the party alleging fraudulent concealment for the purpose of tolling the statute of limitations must plead the circumstances with particularity." Id. at 536–37. Accordingly, "general or conclusory allegations of fraud are insufficient." Douglass v. NTI-TSS, Inc., 632 F.Supp.2d 486, 491 (D.Md. 2009) (quoting Doe v. Archdiocese of Wash., 689 A.2d 634, 643 (Md.Ct.Spec.App. 1997)). Instead, a complaint "must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence." Id. (quoting Archdiocese of Wash., 689 A.2d at 643). In order to invoke § 5-203, the Injured Plaintiffs must "ha[ve]

exercised usual or ordinary diligence for the discovery and protection of . . . [their] rights."
Id. (quoting Frederick Rd. Ltd. P'ship v. Brown & Sturm, 758 A.2d 963, 975 (Md. 2000)).

Here, Injured Plaintiffs claim that the statute of limitations regarding the warranty claims is tolled "due to [Ethicon's] fraudulent concealment and/or waiver." (Pls.' Opp'n Mot. Dismiss at 9–10). They do not, however, provide any details beyond that conclusory statement as to the alleged fraud. Instead, they flatly cite to their First Amended Complaint. (Id. (citing First Am. Compl. ¶¶ 76–80, 145–47, 159–61)).

Turning to the cited paragraphs in the First Amended Complaint, the Court identifies the following argument regarding tolling:

> 159. Defendants' warranties for their TVT-S and TVT devices extend to future performance of the devices, considering Defendants warranted that these devices are to permanently cure or alleviate Plaintiffs' [stress urinary incontinence] and would not need to be partially removed. Defendants warranted that their TVT-S and TVT devices are permanent implants, i.e., they are safe and effective and will cure or alleviate Plaintiffs' [stress urinary incontinence] for their entire lives. Thus, the Statutes of Limitations are tolled until Defendants' breach is or should have been discovered. Here, the breaches were discovered within the Statute of Limitations period. Each Plaintiff discovered Defendants' breach when they were scheduled for each mesh excision/revision procedures.

(First Am. Compl. ¶ 159) (citation omitted). Although they indicate that they discovered Ethicon's breach when they had their respective excision/revision procedures, Plaintiffs do not provide basic information on what the procedures were for, when they occurred, where they were done, or who performed them. Indeed, all Plaintiffs do is state generally that they discovered the breach on "a date within the applicable statute of limitations for filing Plaintiffs' claims." (First Am. Compl. ¶ 78). They do not bother, however, with identifying

those dates for the Court. Instead, they simply assert that their suit "was filed well within the applicable statutory limitations period." (Id.). Injured Plaintiffs fail to provide more than conclusory statements and accordingly fail to identify the alleged fraud with sufficient particularity under Rule 9(b).

Injured Plaintiffs raise one more argument in an attempt to salvage their breach of warranty claims. They argue that Ethicon "made assertions of future performance," which implicates the discovery rule under the § 2-725(2) of the Commercial Law Article. (Pls.' Opp'n Mot. Dismiss at 10). The discovery rule states that a breach of warranty occurs when tender is made, "except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." CL § 2-725(2) (emphasis added). Under the discovery rule, "the cause of action accrues not upon tender of delivery but when the breach is or should have been discovered, and the buyer has four years after that time within which to file suit." Joswick v. Chesapeake Mobile Homes, Inc., 765 A.2d 90, 93 (Md. 2001). The question thus becomes whether a warranty by Ethicon "explicitly extends to future performance" and if discovery of the breach necessarily must await that future performance. Id.

This argument, too, fails. Injured Plaintiffs indicate that Ethicon assured "that the TVT-S and TVT products were safe and reasonably fit for their intended purposes." (First Am. Compl. ¶ 148). More specifically, Plaintiffs allege that Ethicon "expressly warranted that the TVT-S and TVT products may cause 'transient' local wound irritation when, in fact, the devices cause 'chronic' local wound irritation." (Id. ¶ 149). The exception in CL

§ 2-725 "was intended to be a narrow one, strictly construed." <u>Joswick</u>, 765 A.2d at 95. Accordingly, "[a] provision will not be interpreted as applying to future performance unless it very clearly does so," and "[i]f there is any ambiguity[,] it must be interpreted against the existence of such a warranty." <u>Id.</u> (quoting Ronald A. Anderson, <u>Anderson on the Uniform Commercial Code</u> § 2-725:129 at 293 (3d ed. 1994)). Here, Injured Plaintiffs do not identify any <u>explicit</u> language extending a warranty from Defendants to future performance. All Plaintiffs have indicated is that Ethicon improperly stated that the products might cause "transient" wound irritation when they in fact cause "chronic" irritation. (First Am. Compl. ¶ 149). Even viewing this allegation in the light most favorable to Plaintiffs, it remains, at most, an ambiguous statement of future performance. Accordingly, the language must be interpreted against the existence of a warranty of future performance under CL § 2-725(2).

As Plaintiffs have failed to demonstrate that an exception applies that would toll the four-year statute of limitations, their claims for breach of express and implied warranty are time-barred under CL § 2-725(1). Counts V and VI will be dismissed.

### d.   Fraud

Injured Plaintiffs assert claims for fraudulent concealment (Count VII), constructive fraud (Count VIII), and common law fraud (Count IX). Plaintiffs fail to state a claim for fraud under the heightened requirements of Rule 9(b) and Counts VII to IX will be dismissed.

As set forth above, under Maryland law, the elements of fraudulent concealment are:

> (1) the defendant owed a duty to the plaintiff to disclose a
> material fact; (2) the defendant failed to disclose that fact; (3)
> the defendant intended to defraud or deceive the plaintiff; (4)
> the plaintiff took action in justifiable reliance on the
> concealment; and (5) the plaintiff suffered damages as a result
> of the defendant's concealment.

Doll, 814 F.Supp.2d at 537.

Constructive fraud, on the other hand, "is an equitable remedy which disregards the

moral guilt of the defendant." Frank v. Branch Banking & Tr. Co., No. AMD-05-1292,

2006 WL 4396131, at *2 (D.Md. Jan. 19, 2006), aff'd, 191 F.App'x 180 (4th Cir. 2006).

The focus in constructive fraud is "on the breach of a legal or equitable duty resulting in

harm to the public." Id. These claims typically arise in the context of a fiduciary

relationship. Id.

The elements of common law fraud are:

> (1) the defendant made a false representation to the plaintiff,
> (2) the falsity of the representation was either known to the
> defendant or the representation was made with reckless
> indifference to its truth, (3) the misrepresentation was made for
> the purpose of defrauding the plaintiff, (4) the plaintiff relied
> on the misrepresentation and had the right to rely on it, and (5)
> the plaintiff suffered compensable injury as a result of the
> misrepresentation.

Brooks v. Mortg. Inv'rs Corp., No. WDQ-13-1566, 2014 WL 105477, at *5 (D.Md. Jan.

8, 2014) (quoting Hoffman v. Stamper, 867 A.2d 276, 292 (Md. 2005)).

Because all these claims sound in fraud, Plaintiffs must meet the pleading

requirements of Rule 9(b). Id. at *4. "In alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake." Fed.R.Civ.P. 9(b). In order

to meet this heightened pleading standard, a plaintiff "must, at a minimum, describe the

time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." My Nat'l Tax & Ins. Servs., Inc. v. H&R Block Tax Servs., Inc., 839 F.Supp.2d 816, 818 (D.Md. 2012) (quoting United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008)). "These facts are often referred to as the 'who, what, when, where, and how' of the alleged fraud." Id. (quoting Wilson, 525 F.3d at 379). A "lack of compliance with Rule 9(b)'s pleading requirements is treated as failure to state a claim under Rule 12(b)(6)." Dunn v. Borta, 369 F.3d 421, 426 (4th Cir. 2004) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 783 n.5 (4th Cir. 1999)).

Here, Plaintiffs simply do not allege the "who, what, when, where, and how" of the alleged fraud. First, as discussed above, Plaintiffs do not direct the Court to any specific false statement, misrepresentation, or disclosure made by Ethicon. Instead, they allege generally that Ethicon knew or should have known that the TVT and TVT-S products were unsafe. (See, e.g., First Am. Compl. ¶¶ 30–32 (indicating that Defendants "withheld/omitted and/or misrepresented" information), ¶ 60 (stating that Defendants "suppressed" information and "actively and intentionally misled" the public), ¶ 74 (describing general information Defendants "failed to disclose and misrepresented"), ¶ 75 (indicating Defendants made misleading "statements" to Plaintiffs' providers without outlining what the "statements" were)). Without more detail, Plaintiffs' allegations are too generalized to meet the heightened standard of Rule 9(b). See Grinage v. Mylan Pharms., Inc., 840 F.Supp.2d 862, 872 (D.Md. 2011) (finding that plaintiff failed to meet heightened standard of Rule 9(b) for fraud claim where complaint contained no reference to a specific

communication constituting misrepresentation); <u>Merino v. Ethicon Inc.</u>, No. 20-25308-CIV, 2021 WL 1749967, at *11 (S.D.Fla. May 4, 2021) (finding that plaintiff in pelvic mesh case failed to meet 9(b) standard where she provided only generalized allegations of fraud and misrepresentation in her complaint); <u>Zetz v. Boston Sci. Corp.</u>, 398 F.Supp.3d 700, 713–14 (E.D.Cal. 2019) (same) (citing cases).

Injured Plaintiffs argue that the standards of Rule 9(b) should be "relaxed since the requisite information was within [Ethicon's] exclusive knowledge and control, the issues are complex, the fraud occurred over an extended period of time and consists of numerous acts, and discovery is not complete." (Pls.' Opp'n Mot. Dismiss at 13). In support of their request to relax the requirements of 9(b), Plaintiffs cite <u>Starr v. VSL Pharmaceuticals, Inc.</u>, 509 F.Supp.3d 417 (D.Md. 2020), and <u>United States ex rel. King v. Alcon Laboratories, Inc.</u>, 232 F.R.D. 568 (N.D.Tex. 2005). These cases do not offer the support Plaintiffs seek.

In <u>Starr</u>, this Court denied defendants' motion to dismiss in a class action pharmaceutical lawsuit on the grounds that plaintiffs had satisfied the heightened standard of 9(b) for the fraud-based claims in their complaint. 509 F.Supp.3d at 433. <u>Starr</u> is easily distinguishable, though. There, plaintiffs filed a ninety-four-page complaint that revealed "numerous allegations of specific false statements in packaging and marketing materials" and cited web postings including some of the alleged false statements. <u>Id.</u> Moreover, the parties in <u>Starr</u> had engaged in an extensive history of litigation that demonstrated to the Court that the disputes core to the subject lawsuit were of no surprise to the defendants. <u>Id.</u> Here, Plaintiffs have not provided <u>any</u> specific details regarding Ethicon's alleged false

23

statements. Additionally, the parties do not have a history of prior litigation on which basis the Court could conclude that Ethicon was adequately apprised of Plaintiffs' claims.

Further, the Court cannot see how <u>King</u> is of any service to Plaintiffs' arguments. In <u>King</u>, the United States District Court for the Northern District of Texas dismissed King's complaint in a False Claims Act case for "merely alleg[ing] fraudulent 'schemes,'" without providing specific information regarding evidence of the alleged false claims submitted to the government. 232 F.R.D. at 572. When King failed to "identify a single person involved in the alleged fraud" or a single specific date on which a false claim was made, the court held that he had failed to provide sufficient information to state a claim for fraud. <u>Id.</u> This Court fails to see how any other outcome should be reached here, where Plaintiffs similar fail to provide any specific information regarding Ethicon's allegedly false statements.

For these reasons, Plaintiffs claims for fraud (Counts VII–IX) will be dismissed.

### e.   Negligent Misrepresentation

Injured Plaintiffs assert a claim for negligent misrepresentation (Count X). Like the fraud claims, because Plaintiffs fail to identify a specific false statement, their reliance on said statement, and harm, the claim will be dismissed.

The elements of negligent misrepresentation in Maryland are:

> (1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement;
> (2) the defendant intends that his statement will be acted upon by the plaintiff;
> (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury;

(4) the plaintiff, justifiably, takes action in reliance on the
statement; and
(5) the plaintiff suffers damage proximately caused by the
defendant's negligence.

Rucker v. Branch Banking & Tr. Co., No. GJH-20-0881, 2021 WL 962516, at *9–10

(D.Md. Mar. 14, 2021) (quoting Lloyd v. Gen. Motors Corp., 916 A.2d 257, 273 (Md.

2007)). Accordingly, in order for Injured Plaintiffs to effectively plead negligent

misrepresentation, they must allege sufficiently that they justifiably relied on a

misrepresentation by Ethicon and suffered a compensable injury as a result. See id. at *10.

As explained more fully above, Plaintiffs fail to identify a specific false statement

made by Ethicon. Further, they do not allege that they relied on any specific statement or

that they suffered any injury proximately caused by Ethicon's negligent

misrepresentations. As such, Count X will be dismissed.

### f.   Unjust Enrichment

Ms. Thomas and Ms. Shiflett assert claims for unjust enrichment (Count XI). As

Plaintiffs have raised surviving claims for negligent and strict liability failure to warn on

which a claim for unjust enrichment could attach, the Court will not dismiss Count XI.

Under Maryland law, unjust enrichment has three elements:

> (1) A benefit conferred upon the defendant by the plaintiff; (2)
> An appreciation or knowledge by the defendant of the benefit;
> and (3) The acceptance or retention by the defendant of the
> benefit under such circumstances as to make it inequitable for
> the defendant to retain the benefit without the payment of its
> value.

Diane Sales, Inc. v. Am. Express Centurion Bank, No. GLR-14-1063, 2014 WL 11429026,

at *3 (D.Md. July 14, 2014) (quoting Hill v. Cross Country Settlements, LLC, 936 A.2d

343, 351–52 (Md. 2007)). "Unjust enrichment is a quasi-contract." <u>Md. Cas. Co. v.</u>
<u>Blackstone Intern. Ltd.</u>, 114 A.3d 676, 688 (Md. 2015). "[T]he classic measurement of
unjust enrichment damages is the gain to the defendant, not the loss by the plaintiff." <u>Wash.</u>
<u>Cnty. Bd. of Educ. v. Mallinckrodt ARD, Inc.</u>, 431 F.Supp.3d 698, 717–18 (D.Md. 2020)
(quoting <u>Mogavero v. Silverstein</u>, 790 A.2d 43, 53 (Md.Ct.Spec.App. 2002)).

Ethicon argues that because Plaintiffs' remaining claims lie in tort, they may not
proceed with the equitable remedy of unjust enrichment, which it contends lies in contract
or quasi-contract. (Defs.' Mot. Dismiss at 12–13). Plaintiffs respond by arguing that they
were in privity of contract with Defendants as the "ultimate consumers or users of the TVT
and TVT-S products." (Pls.' Opp'n Mot. Dismiss at 16). Both parties miss the mark on this
point.

Although this Court has not identified a case addressing this specific question, the
Court of Special Appeals of Maryland has explained the relationship of unjust enrichment
to other "sources of liability":

> It has been traditional to regard tort and contract as the two
> principal sources of civil liability at common law, although
> liability arising out of a fiduciary relationship has developed
> largely outside these two great categories. There is another
> category that must be separated from all of these; this is
> liability based in unjust enrichment.
> . . . .
> <u>Restitution based upon unjust enrichment cuts across many</u>
> <u>branches of the law, including contract, tort, and fiduciary</u>
> <u>relationship, but it also occupies much territory that is its sole</u>
> <u>preserve.</u>

<u>Alternatives Unlimited, Inc. v. New Balt. City Bd. of Sch. Comm'rs</u>, 843 A.2d 252, 275
(Md.Ct.Spec.App. 2004) (quoting George E. Palmer, <u>The Law of Restitution</u> 1–2 (1978))

(emphasis added). Indeed, courts have recognized implicitly that unjust enrichment claims can tie to underlying tort claims. See Mallinckrodt, 431 F.Supp.3d at 718 (implicitly recognizing that unjust enrichment may be tied to an underlying tort and stating that "[i]t is not clear to the Court whether it is permissible under Maryland law for a suit to consist of a single claim for unjust enrichment without an accompanying underlying tort" (emphasis added)); see also Chassels v. Krepps, 174 A.3d 896, 905–06 (Md.Ct.Spec.App. 2017) (indicating that plaintiff had stated a claim for unjust enrichment in case where remaining claims were for negligence, concealment or non-disclosure, and negligent concealment or non-disclosure). Accordingly, Ethicon's argument that unjust enrichment cannot be tied to claims sounding in tort is unavailing.

Ethicon argues secondarily that the unjust enrichment claim cannot survive because, as argued in the remainder of the Motion to Dismiss, Plaintiffs failed to plead sufficient facts "to show that the devices were unsafe." (Defs.' Mot. Dismiss at 13). That may be true as it pertains to the counts dismissed by the Court above. But Plaintiffs' claims for negligent and strict liability failure to warn survive as unchallenged. Accordingly, there still exist claims to which Plaintiffs' unjust enrichment claim could attach. The Court will therefore deny Ethicon's Motion as to Count XI.

### 2.    Motion to Sever

Ethicon argues that Plaintiffs "carry the burden of establishing that their claims may be permissively joined pursuant to Rule 20." (Defs.' Mot. Sever Pls.' Claims ["Mot. Sever"] at 4, ECF No. 3). From there, Ethicon argues that Plaintiffs have failed to show that the facts in this case meet the standard for mandatory joinder under Federal Rule of

Civil Procedure 19 or permissive joinder under Federal Rule of Civil Procedure 20. In the alternative, Ethicon argues that the Court should exercise its discretion to sever the claims under Federal Rule of Civil Procedure 21.

From the outset, Ethicon is mistaken—the burden is theirs, not the Plaintiffs', to demonstrate that (1) Defendants will be severely prejudiced without a separate trial and (2) the matter to be severed is so "distinct and separable" from the others that a trial on that matter alone may proceed without injustice. Hudock, 2015 WL 1198712, at *18 (quoting Equal Rights Ctr., 483 F.Supp.2d at 489). Ethicon has failed to carry its burden at this early stage. Indeed, Ethicon spends little time in its Motion addressing prejudice at all. To the extent Ethicon does address prejudice, the Court finds that the case is at too premature a stage to adequately determine the potential negative impact on Defendants if Injured Plaintiffs' cases are tried together. The Court can make such a determination at a later time when it has more information on the evidence and claims the Plaintiffs wish to present to the jury. Accordingly, the Court will deny the request to sever without prejudice to allow Ethicon to raise the issue again when the record is more fully developed. See Baublitz v. Peninsula Reg'l Med. Ctr., No. WMN-10-819, 2010 WL 3199343, at *7 (D.Md. Aug. 12, 2010) (declining to address severance of claims arising from thirteen plaintiffs' medical treatment at defendant's facility until the completion of discovery and the resolution of dispositive pretrial motions).

### III.    CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Defendants'

Motion for Partial Dismissal (ECF No. 11) and deny Defendants' Motion to Sever (ECF

No. 3). A separate Order follows.

Entered this 28th day of December, 2021.


                              _____/s/_____
                              George L. Russell, III
                              United States District Judge